NANCY H. WATSON *vs.* JOEL R. WYMAN & another.

Suffolk. December 12, 13, 1893. — March 16, 1894.

Present: ALLEN, HOLMES, MORTON, LATHROP, & BARKER, JJ.

*Mortgage — Payment by Mortgagor before Maturity by giving Second Mortgage — Effect on Rights of Bona Fide Purchaser of First Mortgage before Maturity and Purchaser of Second Mortgage — Equity — Defence.*

A. gave a mortgage of land to B., and, before that matured, gave a second mortgage to B. for a sum including that due on the first mortgage and in satisfaction of it. B. retained in his hands the first mortgage, and afterwards assigned it and indorsed the note secured thereby to C. for value before maturity, and without notice, and on the same day sold the second mortgage to D. *Held,* that D. could not maintain a bill in equity for the cancellation of the first mortgage, but was limited to the right to redeem the land from that mortgage.

Payment of a promissory note before maturity is a personal defence.

BILL IN EQUITY, filed January 5, 1893, against Joel R. Wyman and Irving A. Davis, alleging that on May 22, 1888, the

defendant Wyman, who was seised in fee of a certain parcel of land with the buildings thereon, situated in Chelsea, conveyed the estate in mortgage to one Eben Hutchinson to secure the payment of Wyman's note of even date for $2,000 in three years from its date, and Hutchinson until on or about October 20, 1890, remained in possession of the mortgage and note ; that prior to September 14, 1888, Wyman, having purchased the adjoining lot of land, and desiring to secure a loan of $2,600 upon both lots, and to discharge the mortgage above described, applied to Hutchinson for a loan of $2,600 upon the two lots ; that thereupon Wyman executed and delivered to Hutchinson a mortgage on both lots to secure a note for $2,600 payable to Hutchinson, which mortgage was dated September 14, 1888, and afterwards recorded ; that upon delivery of the mortgage and the note Hutchinson paid to Wyman the sum of $600, and for the further consideration of the mortgage acknowledged to have received full payment of the $2,000 note dated May 22, 1888, and discharged the mortgage to secure the same, and further agreed to have that mortgage discharged upon the record and to deliver up the note of $2,000 ; that by a deed of assignment dated September 22, 1888, and recorded, but simultaneously with the delivery of the mortgage by Wyman to Hutchinson for $2,600, Hutchinson assigned the $2,600 mortgage to the plaintiff, and received therefor the sum of $2,600 in money, $600 of which was paid by him to Wyman as above stated, the balance of $2,000 being for the purpose of cancelling and discharging the previous note and mortgage of $2,000 signed by Wyman and at that time owned and held by Hutchinson ; that thereafter Wyman, until the month of December, 1892, continued semiannually to pay interest on the $2,600 mortgage to the plaintiff ; that Hutchinson never discharged upon the record the mortgage for $2,000, nor delivered up to Wyman the $2,000 note which had been paid, but afterwards executed a deed of assignment of that mortgage, dated October 20, 1890, to the defendant Davis, and at some time unknown to the plaintiff delivered to Davis the mortgage note ; that the assignment was without the knowledge or consent of either Wyman or the plaintiff, who had no knowledge of the existence of the previous mortgage, and was made fraudulently, and Wyman never knew of the assignment of that mortgage

until after Hutchinson fled from the Commonwealth, in May, 1892; that Davis contended that the mortgage for $2,000 so assigned to him by Hutchinson existed as a valid security for the mortgage note, prior to and availing against the plaintiff's mortgage, the same not having been discharged on the record, and had advertised the premises therein described for sale at public auction for the purpose of foreclosing the $2,000 mortgage; and that the plaintiff was ready and willing and offered to pay any sum that might be found due upon Davis's mortgage, that availed against or was prior to the plaintiff's mortgage.

The prayer of the bill was that Davis might be restrained by injunction from further proceeding with his sale as advertised; that a decree might be entered compelling him to deliver up for cancellation the mortgage so held by him, and to execute a release and discharge of the same; and for general relief.

Hearing before *Knowlton,* J., who found the following facts. Wyman, at the time of making the second mortgage, applied for a loan of $600 in addition to the loan for $2,000 which he had before obtained. By arrangement with Hutchinson the second mortgage and note were made for $2,600, and $2,000 of that sum was by agreement of parties appropriated to the payment of the note of May 22, 1888, for that sum, and to the discharge of the first mortgage, and as between the parties that note was then paid, although it remained in Hutchinson's hands. On October 20, 1890, Davis bought the first note and mortgage, and paid $2,000 therefor, the accrued interest appearing by indorsements on the note to have been paid; and he bought in good faith, in the belief that the note and mortgage were good and valid obligations in the hands of Hutchinson. The assignment of the mortgage to the plaintiff was recorded immediately after its date, but the assignment to Davis was not recorded until July 9, 1892. There is due Davis the whole principal of the note of $2,000, and interest from May 22, 1892. The first of the mortgages was recorded on May 25, 1888, and the second on September 25, 1888.

A decree was thereupon entered, sustaining the validity of the mortgage held by Davis, and ordering that, upon the payment by the plaintiff to him within a time limited of the sum of $2,000 and interest from May 22, 1892, Davis should release

and discharge the premises from the mortgage; and that, in default of such payment, Davis should hold the premises free and discharged of the mortgage, and the bill should be dismissed.

The plaintiff appealed to the full court.

*S. L. Whipple*, for the plaintiff.

*B. B. Jones*, for the defendant Davis.

HOLMES, J. This is a bill in equity for the cancellation of a mortgage, but containing an offer to pay any sum that may be found due upon it. The defendant Davis took an indorsement of the note and an assignment of the mortgage for value before maturity, and without notice. Before he did so the mortgagor had given the mortgagee a second mortgage for a sum including that due on the first mortgage and in satisfaction of it, but had left the first mortgage in the mortgagee's hands. On the same day the plaintiff bought the second mortgage.

Payment of the mortgage note on the day when it falls due is performance of the promise, and very possibly would discharge the note even as against one who took it for value and without notice later on the same day. But payment before the day, or a satisfaction like that in the present case, is a defence which binds only the party receiving payment and those who stand in his shoes. *Burbridge* v. *Manners*, 3 Camp. 193, 194. *Morley* v. *Culverwell*, 7 M. & W. 174, 181, 182. *Kernohan* v. *Durham*, 48 Ohio St. 1, 7. *Head* v. *Cole*, 53 Ark. 523, 524. *Palmer* v. *Marshall*, 60 Ill. 289, 293. See *Wheeler* v. *Guild*, 20 Pick. 545, 552, 553, 555.

It commonly is assumed that the mortgage follows the note, and that if the holder can recover on the note he may avail himself of the mortgage. *Taylor* v. *Page*, 6 Allen, 86. *Carpenter* v. *Longan*, 16 Wall. 271. Jones, Mort. (4th ed.) §§ 834–840. We are of opinion that this is the law where the note has been paid in full in advance. As is pointed out in *Morley* v. *Culverwell*, *ubi supra*, payment before the day is not performance of the contract, and it follows, notwithstanding the language often used, that in a strict sense it does not satisfy the condition of the mortgage. If we are right in our concession as to the effect of a payment on the day, we have here the technical reason for the different effect of an earlier payment. The note still stands unperformed, and therefore secured, subject only to a personal

defence, as it is happily called by Mr. Ames. 2 Ames, Bills & Notes, 811. But the very meaning of a personal defence is, that it does not accompany the note into all hands, but only into those which are in no better position than the person against whom it has accrued. Like fraud or duress by threats, it leaves the legal transaction still in full force, and only furnishes a reason why a particular person should not be allowed to insist upon it. It " all proceeds upon an *argumentum ad hominem.* It is saying, you have the title, but you shall not be heard in a court of justice to enforce it against good faith and conscience." Eyre, C. J., in *Collins* v. *Martin,* 1 B. & P. 648, 651, cited by Shaw, C. J., in *Wheeler* v. *Guild,* 20 Pick. 545, 551.

Another argument drawn from the registry laws deserves consideration. A mortgage cannot be extinguished more effectually than by a release. Yet we presume that it hardly would be argued that an unrecorded release would be valid as against a purchaser of the mortgage before maturity and without notice. As was said in a case which settled the law for Massachusetts, " a prior unrecorded deed has no effect except as between the parties to it, and others having notice of it. . . . It is the policy of our laws that a purchaser of land, by examining the registry of deeds, may ascertain the title of his grantor. If there is no recorded deed, he has the right to assume that the record title is the true title. The law has established the rule, for the protection of creditors and purchasers, that an unrecorded deed, if unknown to them, is as to them a mere nullity." *Dow* v. *Whitney,* 147 Mass. 1, 6. It might be thought that the same considerations apply to a quasi discharge by payment of the whole amount in advance. The mortgagor may have an entry made on the margin of the record of the mortgage. Pub. Sts. c. 120, §§ 24, 25. When no such entry is made, and the registry contains no notice of payment of any kind, it would seem that one to whom the mortgagee produces the note not yet due and the mortgage for sale has the same right to assume that the record title is the true title that he would have had in the case of an unrecorded release. If the note were overdue, that would be notice, or would put the purchaser in the position of one having actual notice, and therefore in that case the registry laws would not help him.

In *Grover* v. *Flye,* 5 Allen, 543, the demandant claimed title

under a sale of an equity of redemption on execution.   In fact, the mortgage had been paid in full before it was due, but the record did not disclose the payment, and neither the officer nor the demandant had notice of it.   The court held that the rule was the same that it would have been between the original parties.   In such a case the purchaser, of course, does not claim as indorsee or holder of the mortgage note.   We accept the authority of the decision so far as it goes.   But if it is not to be distinguished satisfactorily from one like the present, so far as the argument from the registry laws is concerned, it has no bearing on the considerations first stated, and those are sufficient to dispose of the case.   It follows that the decree sustaining the mortgage in the hands of the defendant Davis, and limiting the plaintiff to a right to redeem, was correct.

*Decree affirmed.*