JOHN G. BLUNT *vs.* HENRY A. NORRIS.

Suffolk. March 27, 1876. — July 3, 1877. LORD & SOULE, JJ., absent.

A , for the purpose of enabling B. to raise money for him, made a promissory note payable to the order of B., and executed to him a mortgage of land, as security therefor, which was duly recorded. B., without A.'s knowledge or consent, and to secure his own debt, delivered the note unindorsed to C., and afterwards assigned the mortgage and a note, procured from A. by artifice, to D. for value. *Held,* that C. was not, in the absence of fraud on the part of D., entitled in equity to an assignment of the mortgage.

BILL IN EQUITY for the assignment of a mortgage to the plaintiff, or that the same might be declared to be held in trust for him, and for an injunction to restrain the defendant from transferring the same. The case was heard before *Endicott,* J., on the pleadings and a report of a master, and reserved for the determination of the full court, and was as follows:

On or about January 31, 1872, George W. Gerrish executed a mortgage of land in Brighton to Samuel S. Jackson, a real estate broker of Boston, to secure the payment of a promissory note of $2500, of even date with the mortgage, payable to Jackson or order, and stating on its face that it was secured by mortgage of land in Brighton. The mortgage was duly recorded on February 12, 1872. The note and mortgage were given to Jackson, not in payment of, or to secure, any preëxisting debt, nor did Gerrish, at the time or afterwards, receive anything thereon from Jackson, but they were to be negotiated by Jackson, for Gerrish, who wanted to raise money thereon.

On April 25, 1872, Jackson, being indebted to the plaintiff, delivered to him, without the consent or knowledge of Gerrish, the mortgage note, without indorsement, to hold as collateral security for $1500. The plaintiff received the note in good faith, and Jackson paid him, semiannually, the interest on the $1500, and indorsed it on the note to July 31, 1875.

Shortly before July 1, 1872, Gerrish called at Jackson's office, and was asked by his clerk to sign a note, so that Jackson could get the money for him. Gerrish said that he signed the note when he executed the mortgage, to which the clerk replied that Jackson said not. The clerk thereupon wrote a note similar to that described in the mortgage, and Gerrish signed it. Afterwards, about July 1, 1872, the defendant having agreed to lend Gerrish $2000 on the mortgage, Gerrish called at Jackson's office, and got from him the mortgage, and an assignment thereof, under seal, to the defendant, and the last named note, indorsed by Jackson, without recourse, and delivered them to the defendant, as collateral security for a note at three months for $2000; and the defendant accepted them in good faith, and not supposing that any one else had any claim on the mortgage. The defendant did not record the assignment of the mortgage to him until November 13, 1875. Neither the plaintiff nor the defendant has received the principal sum advanced by each respectively.

*R. D. Smith*, for the plaintiff, to the point that the plaintiff was entitled to the relief sought, notwithstanding the fact that the note was not indorsed, cited *King* v. *Harrington*, 2 Aik. 33; *Pratt* v. *Bank of Bennington*, 10 Vt. 293.

*W. A. Herrick*, for the defendant.

AMES, J. The claim of the plaintiff is that, as he acted in good faith, and received the note without notice of any fraud or want of authority on the part of Jackson, the transfer of the note operated as an equitable assignment of the mortgage also. But, as the note was not indorsed to the plaintiff, it could only be sued in the name of Jackson, and was subject to all equities against him; and, even upon the supposition that, so far as it was a matter between the plaintiff and Jackson, the mortgage might be considered as subject to a trust in favor of the plaintiff to the extent of the money which he had advanced, yet he

acquired no right as against the defendant, who was a purchaser for a valuable consideration, and without notice of any claim of the plaintiff.

It appears that, although the mortgage had remained for about five months in the hands of Jackson, nothing had been done in the way of raising money for the use of the mortgagor, until the defendant agreed to advance the money upon it. As Jackson at that time was unable to produce the original note, he was driven to the subterfuge that the note intended to go with the mortgage had never been signed at all. The mortgagor in this way was induced to give what was in fact a new note. There can be no doubt that this new note was the one, and the only one, which the mortgagor intended to secure by the mortgage, and that he did not suppose that there was another note of the same tenor and date in existence. We see no ground for the plaintiff's claim that this new note so given was a spurious note. Up to the moment of the assignment to the defendant, the mortgage was subject to the control of the mortgagor. Jackson was his agent or servant for the purpose of negotiating or transferring it to the actual lender of the money, and with no authority to do anything more. The defendant was dealing with a mortgage which, so far as the public records furnished any indication, was one which the assignment from Jackson would transfer to him, absolutely and free of any incumbrance. While acting in good faith and paying a valuable consideration, he had a right to rely upon the record. " In the absence of fraud, a conveyance by the party who appears on the record to be the owner of the mortgage should be sufficient to protect a purchaser who has no actual or constructive notice of title in any other." *Welch* v. *Priest*, 8 Allen, 165. See also *Young* v. *Miller*, 6 Gray, 152; *Warden* v. *Adams*, 15 Mass. 233; *Wolcott* v. *Winchester*, 15 Gray, 461.                *Bill dismissed.*